UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**PATRICK JAMES WERNER,**  Case No. 14-cv-439-pp

              Plaintiff,

v.

**LT. STEFFENS**,
**CAPTAIN MALCOMSON** (Jail Administrator,
Brown County Sheriff's Department),
and **BROWN COUNTY SHERIFF'S DEPARTMENT**
(Jail Division),

              Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR WAIVER OF THE FILING FEE (DKT. NO. 14), GRANTING MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2), GRANTING HIS REQUEST TO SCREEN HIS COMPLAINT (DKT. NO. 11), SCREENING THE COMPLAINT, DISMISSING THE COMPLAINT FOR FAILURE TO STATE A CLAIM, AND DENYING AS MOOT THE PLAINTIFF'S REQUEST FOR PROCEDURES AND ADDITIONAL INFORMATION (DKT. NO. 11)**

---

On April 16, 2014, the plaintiff filed this civil rights complaint pursuant to 42 U.S.C. §1983. Dkt. No. 1. The plaintiff is an inmate; at the time he filed the complaint, he was at Dodge Correctional Institution. Now he is residing at Oshkosh Correctional Institution. The plaintiff is representing himself. Along with his complaint, the plaintiff filed an application asking the court to allow him to proceed without pre-paying the filing fee. Dkt. No. 2. The court ordered the plaintiff to pay an initial partial filing fee of $13.76. Dkt. No. 5. The plaintiff later explained that due to various circumstances, he needed an extraordinary

1

amount of time to pay that fee, Dkt. No. 8, and in response, the court waived the initial partial filing fee, Dkt. No. 9.

On January 29, 2015, shortly after his case had been reassigned from Judge Clevert to Judge Pepper, the plaintiff filed a motion asking the court to screen his complaint, as well as asking to be provided with "specific procedures" for Judge Pepper. Dkt. No. 11. He also asked for a list of "all the pro se guides," "court information," court reporting and transcripts, a list of "ALL forms in the repository," jury information, "Pro Bono Plan," attorney admissions and "[a] list of all judges." Id.

In his most recent letter to the court, the plaintiff indicated that he has been terminated, would not be able to work "until June 3, 2015," and asked about ways to address the filing fee given his situation. Dkt. No. 14.

### A. Denial of the Plaintiff's June 11 Motion to the Extent that It Constituted a Motion for Waiver of the Filing Fee (Dkt. No. 14)

In response to the plaintiff's request, on July 16, 2014, Judge Clevert entered an order waiving the requirement that the plaintiff pay an initial partial filing fee. Dkt. No. 9. In his June 11, 2015 filing, the plaintiff states that "there is way that Werner would be able to pay either the Initial Partial Filing Fee in these matters, or would he be allowed to make payments to these cases in that he is no longer employed, since he was terminated . . . ." He also asks the court to "read Werner's Motion for Waiver of Filing Fees."

Judge Clevert's July 16, 2014 order in this case remains in effect; the plaintiff is not required to pay an initial partial filing fee in this case. The plaintiff refers to "matters"—plural. The court reviews each case individually; it

2

will review any other cases of the plaintiff's as the need arises. This order applies only to the above-captioned case.

With regard to the full $350 filing fee: the June 11, 2015 letter states, " . . . there is way that Werner would be able to pay either the Initial Partial Filing Fee . . . or would he be allowed to make payments to these cases in that he is no longer employed . . . ." It is not clear to the court whether the plaintiff is asking the court to waive the filing fee in its entirety, or whether he is asking to pay the filing fee in installments over time. He asks the court to read his "Motion for Waiver of Filing Fees." The court cannot find such a document on the docket. The court does have the plaintiff's "Prisoner's Petition and Affidavit to Proceed Without Prepayment of Fees and/or Costs," Dkt. No. 2, in which he indicated that he had no assets, and earned only $0.05 per hour ($4.00 every two weeks) from his prison job. While that document is not a motion to waive fees, it does show that the plaintiff, like most inmates, does not have much money.

If the plaintiff meant to ask the court to waive the $350 filing fee, the law does not allow the court to grant that request. Title 28, U.S.C. §1915(b)(1) states, "notwithstanding subsection (a) [the provision of the law authorizing the court to allow a plaintiff to file a complaint without *pre-paying* the filing fee], if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner **shall be required to pay the full amount of a filing fee**." 28 U.S.C. §1914(b)(1) (emphasis added). For this reason, the court must deny the

3

plaintiff's motion to the extent that he meant to ask the court to waive the filing fee.

**B.     Granting of the Plaintiff's Motion to Proceed *In Forma Pauperis***

To the extent that the plaintiff meant to ask the court to let him pay the $350 filing fee in installments over time, the court can grant that request. As the court noted above, along with his complaint, the plaintiff filed a motion asking the court to allow him to proceed without pre-paying the $350 filing fee. Dkt. No. 2. Judge Clevert originally required him to pay $13.76 as an initial partial filing fee, Dkt. No. 5, but later waived the initial partial filing fee in response to the plaintiff's request, Dkt. No. 9. Because the court finds that the plaintiff does not have the funds to pay the $350 filing fee all at one time, the court will grant his request to proceed *in forma pauperis*—that is, to pay the $350 filing fee over time, from his custodial account—in the manner described at the end of this order.

**C.     Partial Granting and Partial Denial of the Plaintiff's January 29, 2015 Motion to Screen Original Complaint, Motion to Provide Judge Pamela Pepper's Procedures, and Motion to Provide Additional  Information.**

   1.   *Screening of Complaint*

The plaintiff's case has been ready to screen for some time, as he notes in his various pleadings. The court agrees with the plaintiff that it has taken too long to get to his case; all delay after December 29, 2014 is attributable to this court and its case load. The court regrets having delayed the case for this long, and acknowledges its responsibility to the plaintiff. By this order, the court grants the plaintiff's motion to screen his complaint.

4

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss part or all of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous when "it lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the "factual contentions are clearly baseless." Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic

5

recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

The factual section of the plaintiff's complaint is over thirteen pages long. From what the court can tell, the plaintiff alleges that on January 31, 2012, he filed a 42 U.S.C. §1983 law suit against the Department of Corrections; he represented himself in filing this suit. (The court notes that the docket reflects that the plaintiff filed several civil rights cases in 2012. It appears that the case to which he refers is 12-cv-96-CNC, Werner v. Hamblin, et al., filed January 31, 2012, and concluded on March 27, 2014 when the court granted

6

summary judgment in favor of the defendants.) He alleges that he'd been in the Brown County Jail when he filed that complaint (from November 8, 2011 until approximately May 25, 2012).

On February 15, 2013, while the above §1983 action was pending, the plaintiff was brought to the Brown County Jail a second time, after being arrested for an alleged violation of the conditions of his parole/probation conditions of community confinement. He appears to have been in the Brown County Jail this second time, according to the complaint, from February 15, 2013 to March 23, 2014.

The plaintiff indicates that over the 13 months that he was in the Brown County Jail, he was trying to litigate the 2012 §1983 case. To that end, he needed case law, paper on which to write motions and letters, access to the law library, copies of things he wrote, and containers to hold his various papers. He lists, in great detail, the dates upon which he received case law, and how many pages of case law he received:

- \*	He received 9 pages from 2 cases on March 4, 2013;
- \*	He received a yellow legal page on March 9, 2013;
- \*	He received 62 pages from 10 cases on March 11, 2013;
- \*	On March 13, 2013, he was denied a legal pad because he'd been given one four days earlier;
- \*	He received 10 pages from 4 cases on March 13, 2013;
- \*	He received two cases on March 16, 2013, and was "told unable to find case law on 2 more cases." It appears he also "sent inmate notice on law library"—it's not clear if the plaintiff sent the notice, or received it—and asked for clarification "if case law printouts would be provided with access to law library."
- \*	He received 30 pages from 6 cases on March 27, 2013;
- \*	He received a second bin for his papers on May 2, 2013;
- \*	He received 300 sheets of white paper on July 16, 2013;
- \*	He received one ream of paper on August 20, 2013;
- \*	He received copies on or about August 22, 2013;

7

* He received a safety pen on August 23, 2013;
* He received one ream of paper and 3 safety pens on October 7, 2013;
* He received a third bin on an unknown date;
* He received 12 pages from 6 cases on October 14, 2013;
* He received 14 pages from 5 cases on October 16, 2013;
* He received copies of the constitutions and amendments from three states on October 16, 2013;
* He received copies of the Bill of Rights and 8 state constitutions (502 pages) on October 20, 2013;
* He received 2 copies for one case on October 21, 2013;
* He received 3 safety pens on October 31, 2013;
* He received 26 pages of case law on November 3, 2013;
* He received 293 pages of case law on November 10, 2013;
* He received 78 pages of Wisconsin statutes on November 13, 2013;
* He received 298 copies of Wisconsin statutes on November 15, 2013;
* He received 9 pages of Wisconsin statutes on November 17, 2013;
* He received 3 pages from 1 case on November 30, 2013;
* He received a ream of copy paper on December 6, 2013;
* He received 4 pens on an unknown date;
* He received a ream of paper and 6 pens on February 5, 2014;
* He received 1 ream of paper, 3 lined legal pads, and 6 pens on February 25, 2014;
* He received a ream of paper on March 3, 2014;
* He received a ream of paper on March 14, 2014

Despite receiving this rather impressive amount of these materials, the plaintiff argues that, at various times, (a) jail personnel told him that they didn't have to copy handwritten documents for him; (b) jail personnel told him that he'd have to buy legal pads, pens and paper from the canteen with his inmate account money; (c) he was forced to file original documents, which "gave the Defense added proof to discredit" him; (d) he filed numerous grievances about the things he wanted (copies, case law, paper, pens), which jail personnel either ignored or denied; (e) jail personnel refused to provide him with statutes or cases at some points; (f) that at times, jail personnel told him he had to use pencils, not pens, to write his documents; (g) the jail refused to

8

notarize documents written in pencil; (h) a defendant like him with multiple lawsuits against multiple defendants can't afford to pay the $0.25 per page copying fee; (i) the jail tells inmates who can't find things on Lexis/Nexis that they must get those things (cases, addresses, etc.) from their families or lawyers; and (j) the jail doesn't post updates to jail policies.

While the complaint doesn't state this, it is relevant to this lawsuit to note that the plaintiff files lawsuits with great frequency in the Eastern District of Wisconsin. Since January 31, 2012, he has filed a total of fourteen (14) suits in the district:

- \* 12-cv-96-CNC, Werner v. Wall (pro se case under 28 U.S.C. §1983;
- \* 12-cv-380-CNC, Werner v. Gossage (pro se case under 28 U.S.C. §1983);
- \* 12-cv-1164-WEC, Werner v. Hamblin (pro se habeas corpus petition under 28 U.S.C. §2254);
- \* 12-cv-1165-CNC, Werner v. Hamblin (pro se case under 28 U.S.C. §1983);
- \* 14-cv-77-CNC, Werner v. Hall (pro se case under 28 U.S.C. §1983);
- \* 14-cv-211-CNC, Werner v. City of Green Bay (pro se case under 28 U.S.C. §1983);
- \* 14-cv-212-CNC, Werner v. Brown County Jail (pro se case under 28 U.S.C. §1983);
- \* 14-cv-439-PP, Werner v. Steffens (the current case);
- \* 15-cv-103-PP, Werner v. Jones (pro se case under 28 U.S.C. §1983);
- \* 15-cv-104-PP, Werner v. Wall (pro se case under 28 U.S.C. §1983);
- \* 15-cv-114-PP, Werner v. Wall (pro se case under 28 U.S.C. §1983);
- \* 15-cv-115-PP, Werner v. American Express Centurion Bank (pro se case under 28 U.S.C. §1983);
- \* 15-cv-116-PP, Werner v. Richmond (pro se case under 28 U.S.C. §1983);
- \* 15-cv-216-PP, Werner v. City of Green Bay (pro se case under 28 U.S.C. §1983)

The plaintiff filed some of these cases on the same day; many complaints name the same defendants. At least two of the suits name defendants who are

9

not state actors. The plaintiff has filed hundreds—more likely, thousands—of pages of documents, many of which repeat the same legal positions.

Section 1983 of Title 28 protects people from "deprivation of any rights, privileges, or immunities *secured by the Constitution and laws*" by "person[s]" who are acting "under color of any statute, ordinance, regulation, custom, or usages, of any State or Territory . . . ." So, in order to prove that a defendant violated 42 U.S.C. § 1983, a plaintiff must allege that the defendant: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); *see also* Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

In this case, the plaintiff alleges that three defendants deprived him of rights secured by the Constitution or laws of the United States: "Lt. Steffen;" "Captain Malcomson, Jail Administrator, Brown County Sheriff's Department;" and "Brown County Sheriff's Department."

In the over 13 pages of facts the plaintiff recounts in his complaint, he mentions Lt. Steffen only twice. On page 8 of his complaint, the plaintiff alleges that in response to his Grievance No. 4475, Lt. Steffen responded, "We had the Shift Lt. provide you with a ream of paper to transcribe the copies. I hope that

10

this will assist you." On page 10, he alleges that when he asked for "various WI Acts" on November 20, 2013, Lt. Steffen denied that request, stating "the jail is not required to print copies of WI Acts as it is an unnecessary burden on operations." With regard to Lt. Steffen's response that he had the shift lieutenant provide the plaintiff with a ream of paper, it appears that rather than denying the plaintiff the supplies he requested, Lt. Steffen did exactly the opposite—he did what the plaintiff asked, and did so politely.

With regard to the plaintiff's allegation that Lt. Steffens told him that the jail did not have to print copies of Wisconsin statutes: The Seventh Circuit has held that "[it] is indisputably established that prisoners have a fundamental, constitutional right of access to the courts." Corgain v. Miller, 708 F.2d 1241, 1247 (7th Cir. 1983). The Supreme Court has held that this right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). "Prison authorities need not provide both of these, but must provide one or the other, or a comparable alternative." DeMallory v. Cullen, 855 F.2d 442, 446 (7th Cir. 1988), citing Bounds at 828.

The plaintiff does not argue that he was denied access to a law library—indeed, he describes the library facilities in the Brown County Jail in some detail in his complaint. Rather, he argues that, while he'd been given copies of certain Wisconsin statutes by other prison staff in the past (For example, on November 13, 2013, Corporal Anderson gave him 78 pages of various

11

Wisconsin statutes, and on November 17, 2013, Corporal Leyendecher provided him with nine pages of Wisconsin statutes), on November 20, 2013, when he again asked for copies of Wisconsin statutes, Lt. Steffen responded that the jail was not required to print such copies.

"To make out a claim under section 1983 based on denial of copying privileges [the plaintiff] ha[s] to show that the denial prevented him from exercising his constitutional right of access to the courts." Jones v. Franzen, 697 F.2d 801, 803 (7th Cir. 1983), citing Johnson v. Parke, 642 F.2d 377, 380 (10th Cir. 1981) ("The constitutional concept of an inmate's right of access to the courts does not require that prison officials provide inmates free or unlimited access to photocopying machinery," at 380); Bounds, 430 U.S. at 821. In addition, the plaintiff must show "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." Ray v. Wyciskalla, 461 Fed. Appx. 507, 509 (7th Cir. 2012)(unpublished), *quoting* Ortiz v. Downey, 561 F.3d 664, 671 (7th Cir. 209), and referencing Guajardo-Palma v. Martinson, 622 F.3d 801, 805-806 (7th Cir. 2010). This requires a plaintiff "to identify the underlying claim that was lost." Id., citing Christopher v. Harbury, 536 U.S. 403, 416 (2002); Steidl v. Fermon, 494 F.3d 623, 633 (7th Cir. 2007).

The plaintiff's own facts demonstrate that he received pages and pages of statutes from prison staff; he does not indicate which statutes he requested on November 20, or how they were different from the statutes he'd already received on several other dates, or why he needed these particular statutes in

12

order to prepare his habeas petition. He seems to be arguing that if the jail provided him with copies of statutes on some occasions, it was required by the Constitution to continue to provide copies indefinitely. That is not what the law states. The has not demonstrated that, because he did not receive copies of the particular statutes he requested on November 20, he lost, or was unable to pursue, a particular claim in his habeas case. For this reason, the court will not allow him to proceed on his claim against Lt. Steffen.

The 13 pages of facts recited in the complaint do not mention the second defendant, Captain Malcomson (the administrator of the Brown County Sheriff's Department), at all. While the plaintiff may have named Captain Malcomson because he assumed that the jail administrator was the supervisor of whoever the plaintiff believes deprived him of his constitutional rights, 42 U.S.C. §1983 does not allow plaintiffs to sue supervisors for the errors of their subordinates. *See* Pacelli v. deVito, 972 F.2d 871, 878 (7th Cir. 1992); West By and Through Norris v. Waymire, 114 F.3d 646, 649 (7th Cir. 1997). Section 1983 does not create liability for groups, nor does it allow a plaintiff to sue one person in place of another. Id. at 877-78. Thus, because the plaintiff does not allege that Captain Malcomson personally committed any constitutional violations, the court will not allow him to proceed on his claim against Captain Malcomson.

The plaintiff names as the last defendant the Brown County Sheriff's Department, Jail Division. The Brown County Sheriff's Department is not a governmental entity that can be sued under 42 U.S.C. §1983. "Sheriff's

13

departments and police departments are not usually considered legal entities subject to suit, but 'capacity to sue or be sued shall be determined by the law of the state in which the district court is held.'" Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (internal citations omitted). *See also* Fed. R. Civ. P. 17(b)(3). The Seventh Circuit Court of Appeals has held that a Wisconsin sheriff's department "is not a legal entity separable from the county government which it serves and is therefore, not subject to suit." Whiting v. Marathon Cnty. Sheriff's Dep't., 382 F.3d 700, 704 (7th Cir. 2004), citing Buchanan v. Kenosha, 57 F.Supp.2d 675, 678 (E.D. Wis. 1999). For this reason, the court will not allow the plaintiff to proceed on his claim against the Brown County Sheriff's Department.[1]

For the above reasons, the court will dismiss the plaintiff's complaint. The court finds, based on the complaint's extensive recitation of all the supplies and copies the jail provided the plaintiff, that the allegations in this complaint are frivolous.

---

[1] Page 3 of the complaint indicates that the plaintiff sues the defendants in their individual and official capacities. Dkt. No. 1 at 3. Section 1983 prohibits "person[s]" acting under color of law from violating someone's constitutional rights. In order to allege a §1983 action against a defendant in his or her official capacity, the complaint must allege that 'official policy is responsible for [the] deprivation of rights protected by the constitution." *Monell v. Dept. of Social Serv's. of City of New* York, 436 U.S. 658, 690-91 (1978). To the extent that the plaintiff attempts to assert "official policy" claims in his complaint, he asserts them against the wrong defendant.

14

2. *Denial of Motion for Procedures/Additional Information*

Because the court is dismissing the plaintiff's complaint, his request for procedures and additional information is moot. The court will deny that portion of the motion at Dkt. No. 11 for that reason.

**D.** **Conclusion**

The court **DENIES** the plaintiff's request for waiver of the case filing fee. (Dkt. No. 14).

The court **GRANTS** the plaintiff's motion to proceed in *forma pauperis*. Dkt. No. 2. The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $350.00 filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payment to the clerk of the court each time the amount in the account exceeds $10, in accordance with 28 U.S.C. §1915(b)(2). The Secretary must clearly identify the payments by the case name and number assigned to the case.

The court **GRANTS** that portion of the plaintiff's January 29, 2015 motion asking the court to screen his complaint. (Dkt. No. 11).

The court **DISMISSES** this case pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1). The court will instruct the clerk of court to enter judgment accordingly. The court also instructs the clerk of court to document that this inmate has brought an action that was dismissed as frivolous under 28 U.S.C.

15

§§1915(e)(2)(B) and 1915A(b)(1), and thus that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

The court **DENIES** the plaintiff's motion to be provided with procedures and additional information as **MOOT**. (Dkt. No. 11.)

The court will mail a copy of this order to the warden of the institution where the plaintiff is confined.

Dated in Milwaukee this 7th day of July, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge